**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| PENN-AMERICA INSURANCE COMPANY, | ) Civil Action No.: 2:26-cv-02842-BHH |
| Plaintiff, | ) |
| vs. | ) **COMPLAINT FOR DECLARATORY** |
| | ) **JUDGMENT** |
| YOKAI TATTOO CLUB, LLC, GLENN R. COLLINS, CAMERON YECKE, SHAWN M. WILSON, TANQUESHIA ANDERSON, ELLESEE JAMES, AND JOHN SMITH, | ) |
| Defendants. | ) |

Plaintiff Penn-America Insurance Company ("Penn-America"), by and through its undersigned counsel, files this Complaint for Declaratory Judgment against Defendants Yokai Tattoo Club, LLC ("Yokai"), Glenn R. Collins ("Collins"), Cameron Yecke ("Yecke"), Shawn M. Wilson ("Wilson"), Tanqueshia Anderson ("Anderson"), Ellesse James ("James"), and John Smith ("John Smith"), and alleges as follows:

**NATURE OF THE ACTION**

1.     This is an action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, seeking a declaration of Penn-America's rights and obligations under Commercial General Liability Policy No. PAV0507204 issued to Yokai for the policy period July 24, 2024 to July 24, 2025 (the "Policy").

2.     Penn-America seeks a declaration that, under the Policy, Penn-America has no duty to defend and no duty to indemnify Yokai, Collins, Yecke, Wilson, or any other insured in connection with the civil action styled *Tanqueshia Anderson and Ellesse James v. Yokai Tattoo*

*Club, LLC, Glenn R. Collins, Cameron Yecke, Shawn M. Wilson, and John Smith*, pending in the Court of Common Pleas for Berkeley County, South Carolina, Civil Action No. 2026-CP-08-02160 (the "Underlying Action").

1.    The Underlying Action alleges that Anderson and James contracted Mycobacteroides abscessus or M. abscessus, an alleged bacterial infection, after receiving tattoos at Yokai's tattoo parlor on or about May 13, 2025.

2.    The Underlying Action asserts claims against the Yokai Defendants for negligence/gross negligence, negligence per se, and strict product liability, and seeks actual damages, punitive damages, costs, and other relief.

3.    An actual and justiciable controversy exists between Penn-America and Defendants concerning the existence and extent of coverage, if any, under the Policy for the Underlying Action.

## JURISDICTION AND VENUE

4.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between Penn-America and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.    Penn-America is an insurance company organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in Pennsylvania.

6.    Upon information and belief, Yokai is a South Carolina limited liability company with its principal place of business located at 1316 Red Bank Road, Suite 3, Goose Creek, South Carolina 29445. Upon information and belief, no member of Yokai is a citizen of Pennsylvania.

7.    Upon information and belief, Collins is a citizen and resident of Charleston County, South Carolina.

8.    Upon information and belief, Yecke is a citizen and resident of Berkeley County, South Carolina.

9.    Upon information and belief, Wilson is a citizen and resident of Berkeley County, South Carolina.

10.    Upon information and belief, Anderson is a citizen and resident of Charleston County, South Carolina.

11.    Upon information and belief, James is a citizen and resident of Charleston County, South Carolina.

12.    Upon information and belief, John Smith is an individual or entity whose true name and citizenship are presently unknown to Penn-America. Penn-America alleges, upon information and belief, that John Smith is not a citizen of Pennsylvania. Penn-America reserves the right to amend these allegations after John Smith's identity and citizenship are determined.

13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this District, the Underlying Action is pending in Berkeley County, South Carolina, Yokai's tattoo parlor is located in Berkeley County, South Carolina, and the Policy was issued to insure business operations in South Carolina.

14.    The Charleston Division is the proper division because the Underlying Action is pending in Berkeley County, South Carolina, and the alleged injury-causing conduct occurred in Berkeley County, South Carolina.

## PARTIES

15.    Penn-America issued the Policy identified above to Yokai, subject to all terms, conditions, limitations, exclusions, and endorsements.

3

16.    Yokai is named as a defendant in the Underlying Action and is the named insured under the Policy.

17.    Collins is named as a defendant in the Underlying Action. The Underlying Action alleges that Collins was the owner of Yokai at all relevant times.

18.    Yecke is named as a defendant in the Underlying Action. The Underlying Action alleges that Yecke was the manager of Yokai at all relevant times.

19.    Wilson is named as a defendant in the Underlying Action. The Underlying Action alleges that Wilson was a tattoo artist at Yokai at all relevant times.

20.    Anderson is a plaintiff in the Underlying Action and is named as a defendant in this declaratory judgment action because she claims damages in the Underlying Action and may claim an interest in the proceeds of the Policy.

21.    James is a plaintiff in the Underlying Action and is named as a defendant in this declaratory judgment action because she claims damages in the Underlying Action and may claim an interest in the proceeds of the Policy.

22.    John Smith is named as a defendant in the Underlying Action and is named as a defendant in this declaratory judgment action because the Underlying Action alleges that John Smith was involved in marketing, manufacturing, distributing, and/or selling tattoo supplies allegedly implicated in the Underlying Action.

### THE UNDERLYING ACTION

23.    On or about June 6, 2026, Anderson and James filed the Underlying Action in the Court of Common Pleas for Berkeley County, South Carolina. *See* Amended Complaint, attached hereto as Exhibit A.

4

24.     The Underlying Action is captioned Tanqueshia Anderson and Ellesse James v. Yokai Tattoo Club, LLC, Glenn R. Collins, Cameron Yecke, Shawn M. Wilson, and John Smith, Civil Action No. 2026-CP-08-02160.

25.     The complaint in the Underlying Action alleges that Yokai owns and operates a tattoo parlor doing business as "Yokai Tattoo Club" located at 1316 Red Bank Road, Suite 3, Goose Creek, South Carolina 29445.

26.     The complaint in the Underlying Action alleges that, on or about May 13, 2025, Anderson and James were lawful business invitees and customers at the tattoo parlor to obtain tattoos.

27.     The complaint in the Underlying Action alleges that Wilson, acting within the scope of his agency or employment with the other Yokai Defendants, applied tattoos to Anderson and James using tattoo supplies designed, manufactured, assembled, tested, labeled, marketed, distributed, and/or sold by John Smith and assembled, marketed, distributed, and/or sold by the Yokai Defendants.

28.     The complaint in the Underlying Action alleges that Anderson and James thereafter developed serious, prolonged, and ongoing skin infections at the sites of their respective tattoo applications.

29.     The complaint in the Underlying Action identifies the alleged infections as Mycobacteroides abscessus or M. abscessus.

30.     The complaint in the Underlying Action alleges that M. abscessus is an extremely rare and highly treatment-resistant bacterial infection in the same family as tuberculosis and leprosy.

31.     The complaint in the Underlying Action alleges that M. abscessus may cause human infection when introduced into the body through contaminated injections, contaminated products, equipment, instruments, or materials used during invasive procedures, or through exposure of a wound to contaminated water.

32.     The complaint in the Underlying Action alleges that Anderson's and James's infections were proximately caused by tattoo products and/or supplies used on them by the Yokai Defendants at the tattoo parlor.

33.     The complaint in the Underlying Action asserts causes of action against the Yokai Defendants for negligence/gross negligence, negligence per se, and strict product liability.

34.     The negligence/gross negligence claim alleges, among other things, that the Yokai Defendants failed to use proper equipment and supplies, failed to maintain equipment and supplies, failed to keep equipment and supplies clean and sterile, failed to inspect equipment and supplies, failed to prevent infections and minimize complications, and failed to take reasonable care in performing tattoo procedures.

35.     The negligence *per se* claim alleges, among other things, violations of South Carolina statutes and regulations governing tattoo facilities and tattoo procedures, including S.C. Code Ann. §§ 44-34-30 and 44-34-50 and S.C. Code Regs. 60-111.

36.     The strict product liability claim against the Yokai Defendants alleges that tattoos and tattoo supplies were defective and unreasonably dangerous because the alleged defects permitted the tattoos and tattoo supplies to contain and spread dangerous bacterial infections.

37.     The Underlying Action seeks actual damages, punitive damages, costs, and such other relief as the court deems just.

## THE POLICY

38.     Penn-America issued Commercial General Liability Policy No. PAV0507204 to Yokai for the policy period July 24, 2024 to July 24, 2025. *See* Policy, attached hereto as Exhibit B.

39.     The Policy identifies the named insured as Yokai Tattoo Club, LLC and the business description as Tattoo Shop.

40.     The Policy includes Commercial General Liability coverage, subject to all terms, conditions, limitations, exclusions, and endorsements.

41.     The Commercial General Liability declarations reflect, among other things, a General Aggregate Limit of $2,000,000, an Each Occurrence Limit of $1,000,000, a Personal and Advertising Injury Limit of $1,000,000, and a Medical Expense Limit of $1,000.

42.     The Policy also includes a Miscellaneous Professional Liability Coverage endorsement, subject to its own terms, conditions, limitations, exclusions, and limits.

43.     The Miscellaneous Professional Liability Coverage endorsement reflects, among other things, a Miscellaneous Professional Liability Each Occurrence Limit of $1,000,000 and a Miscellaneous Professional Liability Aggregate Limit of Liability of $1,000,000.

44.     The Miscellaneous Professional Liability Coverage endorsement identifies the professional class code description as Tattoo Parlors - Tattoo Only per artist/4.

45.     The Policy's Commercial General Liability Coverage Form provides, in relevant part:

****

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against

7

any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

\*\*\*\*

46.     Coverage under Coverage A applies only if, among other requirements, the alleged "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the coverage territory and the alleged "bodily injury" or "property damage" occurs during the policy period.

47.     Endorsement GCG 2004 09 22 — Total Exclusion – Professional Services adds the following exclusion to Coverage A and Coverage B:

\*\*\*\*

This insurance does not apply to:

Professional Services

"Bodily injury", "property damage", or "personal and advertising injury" arising out of the rendering of or failure to render any professional service by you or on your behalf, including but not limited to:

…

Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming or therapy; … Body piercing and related services;

\*\*\*\*

48.     The Total Exclusion – Professional Services further provides:

\*\*\*\*

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage," or the offense which caused the "personal and advertising injury" involved the rendering of or failure to render any professional service.

****

49.    Endorsement CG 21 32 05 09 — Communicable Disease Exclusion provides, in relevant part, that the insurance does not apply to:

****

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

****

50.    The Communicable Disease Exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervising, hiring, employing, training, or monitoring of others that may be infected with and spread a communicable disease; testing for a communicable disease; failure to prevent the spread of the disease; or failure to report the disease to authorities.

51.    Endorsement CG 21 67 12 04 — Fungi or Bacteria Exclusion provides, in relevant part, that Coverage A does not apply to:

****

"Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

****

52.    The Fungi or Bacteria Exclusion further excludes any loss, cost, or expense arising out of abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, responding to, or assessing the effects of "fungi" or bacteria by any insured or any other person or entity.

9

53. The Fungi or Bacteria Exclusion states that it does not apply to "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

54. The Miscellaneous Professional Liability Coverage endorsement provides, in relevant part:

\*\*\*\*

We will pay those sums that you become legally obligated to pay as "loss" caused by a "wrongful act" to which this insurance applies. We will have the right and duty to defend you against any "claim". However, we will have no duty to defend you against any "claim" to which this insurance does not apply.

\*\*\*\*

55. The Miscellaneous Professional Liability Coverage applies only if, among other requirements, the "wrongful act" takes place within the "coverage territory," occurs during the policy period, and was not, prior to the policy period, known to have occurred by any insured.

56. For purposes of Miscellaneous Professional Liability Coverage, the Policy excludes "loss" based upon, arising out of, or attributable to any actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material, or product contributed concurrently or in any sequence to such injury or damage.

57. For purposes of Miscellaneous Professional Liability Coverage, the Policy excludes "loss" based upon, arising out of, or attributable to any fraudulent, criminal, malicious, or dishonest act or omission, or any willful violation of any statute or regulation by an insured, subject to the terms and limitations of that exclusion.

10

58.     For purposes of Miscellaneous Professional Liability Coverage, the Policy excludes "loss" based upon, arising out of, or attributable to any actual or alleged breach of a warranty, guarantee, or promise, subject to the terms and limitations of that exclusion.

59.     Endorsement EPA 1466 12 09 — Punitive and Exemplary Damages provides that the insurance does not apply to punitive damages, exemplary damages, fines, penalties, treble damages, or any other increase in damages resulting from the multiplication of compensatory damages.

60.     Penn-America received notice of the Underlying Action and opened Claim No. 26002438.

61.     By letter dated July 9, 2026, Penn-America, through counsel, advised Yokai that Penn-America would provide a defense to the Yokai Defendants in the Underlying Action subject to a full and complete reservation of rights.

62.     Penn-America's reservation of rights expressly reserved the right to deny coverage, withdraw from the defense to the extent permitted by law, seek a judicial declaration of its rights and obligations, and seek allocation or reimbursement to the extent permitted by applicable law.

63.     Penn-America's agreement to defend under a reservation of rights does not constitute an admission that any claim, allegation, damage, judgment, settlement, award, cost, or expense in the Underlying Action is covered under the Policy.

64.     Penn-America reserves all rights under the Policy and applicable law, including the right to assert additional coverage defenses as additional facts, pleadings, discovery, expert opinions, medical information, government records, or other materials become available.

## COUNT I – DECLARATORY JUDGMENT
### (NO DUTY TO DEFEND OR INDEMNIFY UNDER COMMERICAL GENERAL LIABILITY BECAUSE COVERAGE IN THE UNDERLYING ACTION ARISES OUT OF PROFESSIONAL SERVICES)

65.     Penn-America incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

66.     The Underlying Action alleges that Anderson and James were customers at Yokai's tattoo parlor and that Wilson, acting within the scope of his agency or employment with the other Yokai Defendants, applied tattoos to Anderson and James.

67.     The Underlying Action alleges bodily injury arising out of tattoo procedures and related services performed by or on behalf of Yokai.

68.     The alleged tattoo procedures and related services constitute services, treatment, advice, or instruction for the purpose of appearance or skin enhancement, personal grooming, body piercing, or related services within the meaning of the Policy's Total Exclusion – Professional Services.

69.     The Total Exclusion – Professional Services bars coverage under the Commercial General Liability coverage for "bodily injury," "property damage," or "personal and advertising injury" arising out of the rendering of or failure to render any professional service by Yokai or on Yokai's behalf.

70.     The exclusion applies even if the Underlying Action alleges negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others, if the occurrence that caused the alleged bodily injury involved the rendering of or failure to render any professional service.

71.     Because the Underlying Action arises out of the rendering of or failure to render professional services, Penn-America is entitled to a declaration that it has no duty to defend and

12

no duty to indemnify Yokai, Collins, Yecke, Wilson, or any other insured under the Commercial General Liability coverage for the Underlying Action.

**COUNT II – DECLARATORY JUDGMENT**
**( NO DUTY TO DEFEND OR INDEMNIFY UNDER COMMERCIAL GENERAL LIABILITY COVERAGE BASED ON THE FUNGI OR BACTERIA EXCLUSION)**

72.     Penn-America incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

73.     The Underlying Action alleges that Anderson and James developed M. abscessus, an alleged bacterial infection, after receiving tattoos at Yokai's tattoo parlor.

74.     The Underlying Action alleges that M. abscessus may be introduced into the body through contaminated injections, contaminated products, equipment, instruments, materials used during invasive procedures, or exposure of a wound to contaminated water.

75.     The Underlying Action alleges that the infections were proximately caused by tattoo products and/or supplies used on Anderson and James by the Yokai Defendants at the tattoo parlor.

76.     The Policy's Fungi or Bacteria Exclusion bars coverage for "bodily injury" or "property damage" that would not have occurred, in whole or in part, but for the actual, alleged, or threatened contact with, exposure to, existence of, or presence of any bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material, or product contributed concurrently or in any sequence to such injury or damage.

77.     The alleged injuries in the Underlying Action would not have occurred, in whole or in part, but for the alleged contact with, exposure to, existence of, or presence of bacteria on or within Yokai's tattoo parlor, including its contents, products, supplies, equipment, instruments, materials, or water.

13

78. The Underlying Action does not allege that the bacteria were on or contained in a good or product intended for bodily consumption.

79. Because the Underlying Action alleges bodily injury that falls within the Fungi or Bacteria Exclusion, Penn-America is entitled to a declaration that it has no duty to defend and no duty to indemnify Yokai, Collins, Yecke, Wilson, or any other insured under the Commercial General Liability coverage for the Underlying Action.

## COUNT III – DECLARATORY JUDGMENT
### (NO DUTY TO DEFEND OR INDEMNIFY UNDER COMMERCIAL GENERAL LIABILITY COVERAGE BASED ON THE COMMUNICABLE DISEASE EXCLUSION)

80. Penn-America incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

81. The Underlying Action alleges that Anderson and James contracted M. abscessus, an alleged bacterial infection, after receiving tattoos at Yokai's tattoo parlor.

82. The Underlying Action alleges that the alleged bacterial infection was introduced through contaminated injections, contaminated products, equipment, instruments, materials, or exposure of a wound to contaminated water.

83. To the extent the injuries alleged in the Underlying Action arise out of the actual or alleged transmission of a communicable disease, the Policy's Communicable Disease Exclusion bars coverage.

84. The Communicable Disease Exclusion applies even if the Underlying Action alleges negligence or other wrongdoing in supervision, hiring, employment, training, monitoring, testing, failure to prevent the spread of disease, or failure to report disease to authorities.

85. Because the Underlying Action alleges bodily injury arising out of the actual or alleged transmission of a communicable disease, Penn-America is entitled to a declaration that it

14

has no duty to defend and no duty to indemnify Yokai, Collins, Yecke, Wilson, or any other insured under the Commercial General Liability coverage for the Underlying Action.

**<u>COUNT IV – DECLARATORY JUDGMENT</u>**
(NO DUTY TO DEFEND OR INDEMNIFY UNDER MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE BASED ON THE FUNGI OR BACTERIA EXCLUSION)

86.    Penn-America incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

87.    The Miscellaneous Professional Liability Coverage endorsement applies only to "loss" caused by a "wrongful act" to which that insurance applies, and only subject to all terms, conditions, limitations, and exclusions of that endorsement and the Policy.

88.    The Miscellaneous Professional Liability Coverage endorsement excludes "loss" based upon, arising out of, or attributable to any actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material, or product contributed concurrently or in any sequence to such injury or damage.

89.    The Underlying Action alleges that Anderson and James suffered bodily injuries, damages, and loss arising out of an alleged bacterial infection allegedly caused by tattoo products and/or supplies used at Yokai's tattoo parlor.

90.    The alleged loss in the Underlying Action is based upon, arises out of, or is attributable to the alleged contact with, exposure to, existence of, or presence of bacteria on or within Yokai's tattoo parlor, including its contents, products, supplies, equipment, instruments, materials, or water.

91.    Because the Underlying Action falls within the Miscellaneous Professional Liability Coverage endorsement's Fungi or Bacteria exclusion, Penn-America is entitled to a

15

declaration that it has no duty to defend and no duty to indemnify Yokai, Collins, Yecke, Wilson, or any other insured under the Miscellaneous Professional Liability Coverage endorsement for the Underlying Action.

### COUNT V – DECLARATORY JUDGMENT
### (NO COVERAGE FOR WILLFUL STATUTORY OR REGULATORY VIOLATIONS TO THE EXTENT ESTABLISHED)

92.    Penn-America incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

93.    The Underlying Action alleges, among other things, gross negligence, recklessness, willfulness, wantonness, negligence per se, and violations of South Carolina statutes and regulations governing tattoo facilities and tattoo procedures.

94.    The Miscellaneous Professional Liability Coverage endorsement excludes "loss" based upon, arising out of, or attributable to any fraudulent, criminal, malicious, or dishonest act or omission, or any willful violation of any statute or regulation by an insured, subject to the terms and limitations of the exclusion.

95.    To the extent any "loss" in the Underlying Action is based upon, arises out of, or is attributable to any fraudulent, criminal, malicious, dishonest, intentional, or willful violation of any statute or regulation by an insured, such loss is excluded under the Policy.

96.    Penn-America is entitled to a declaration that it has no duty to indemnify any insured for any loss, judgment, award, settlement, or damages in the Underlying Action that are based upon, arise out of, or are attributable to any fraudulent, criminal, malicious, dishonest, intentional, or willful violation of any statute or regulation by an insured, subject to the terms and limitations of the Policy.

16

## COUNT VI – DECLARATORY JUDGMENT
(NO COVERAGE FOR BREACH OF WARRNTY, GUARANTEE, OR PROMISE TO THE EXTENT ALLEGED OR ESTABLISHED)

97. Penn-America incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

98. The Underlying Action alleges that the Yokai Defendants made express and/or implied warranties regarding the safety, quality, fitness, and merchantability of the tattoos and tattoo supplies, and breached such warranties.

99. The Miscellaneous Professional Liability Coverage endorsement excludes "loss" based upon, arising out of, or attributable to any actual or alleged breach of a warranty, guarantee, or promise, subject to the terms and limitations of the exclusion.

100. To the extent any "loss" in the Underlying Action is based upon, arises out of, or is attributable to any actual or alleged breach of warranty, guarantee, or promise, such loss is excluded under the Policy.

101. Penn-America is entitled to a declaration that it has no duty to indemnify any insured for any loss, judgment, award, settlement, or damages in the Underlying Action that are based upon, arise out of, or are attributable to any actual or alleged breach of warranty, guarantee, or promise, subject to the terms and limitations of the Policy.

## COUNT VII – DECLARATORY JUDGMENT
(NO COVERAGE FOR PUNITIVE OR EXEMPLARY DAMAGES)

102. Penn-America incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

103. The Underlying Action seeks punitive damages.

17

104.    The Policy provides that the insurance does not apply to punitive damages, exemplary damages, fines, penalties, treble damages, or any other increase in damages resulting from the multiplication of compensatory damages.

105.    Penn-America is entitled to a declaration that it has no duty to indemnify Yokai, Collins, Yecke, Wilson, or any other insured for any punitive damages, exemplary damages, fines, penalties, treble damages, or any other increase in damages resulting from the multiplication of compensatory damages awarded in the Underlying Action.

### COUNT VIII – DECLARATORY JUDGMENT
(RIGHTS RESERVED AS TO ADDITIONAL POLICY TERMS, CONDITIONS, LIMITATIONS, AND EXCLUSIONS)

106.    Penn-America incorporates by reference the allegations of the preceding paragraphs as if fully set forth herein.

107.    Penn-America has defended the Underlying Action subject to a full reservation of rights.

108.    Penn-America does not waive any policy term, condition, limitation, exclusion, defense, or right by filing this declaratory judgment action, defending any insured under a reservation of rights, appointing defense counsel, investigating the claim, participating in settlement discussions, or taking any other action in connection with the Underlying Action.

109.    Penn-America reserves the right to assert additional coverage defenses if additional facts, pleadings, discovery, expert opinions, medical information, government records, regulatory materials, or other information become available.

110.    Penn-America is entitled to a declaration that it has not waived and is not estopped from asserting any other applicable Policy term, condition, limitation, exclusion, defense, or right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Penn-America Insurance Company respectfully requests that the Court enter judgment in its favor and against Defendants as follows:

A. Declaring that Penn-America has no duty to defend Yokai, Collins, Yecke, Wilson, or any other insured in the Underlying Action under the Commercial General Liability coverage because the Underlying Action arises out of professional services;

B. Declaring that Penn-America has no duty to indemnify Yokai, Collins, Yecke, Wilson, or any other insured in the Underlying Action under the Commercial General Liability coverage because the Underlying Action arises out of professional services;

C. Declaring that Penn-America has no duty to defend or indemnify Yokai, Collins, Yecke, Wilson, or any other insured in the Underlying Action under the Commercial General Liability coverage based on the Fungi or Bacteria Exclusion;

D. Declaring that Penn-America has no duty to defend or indemnify Yokai, Collins, Yecke, Wilson, or any other insured in the Underlying Action under the Commercial General Liability coverage based on the Communicable Disease Exclusion;

E. Declaring that Penn-America has no duty to defend or indemnify Yokai, Collins, Yecke, Wilson, or any other insured in the Underlying Action under the Miscellaneous Professional Liability Coverage endorsement based on the Fungi or Bacteria exclusion;

F. Declaring that Penn-America has no duty to indemnify any insured for loss, judgment, award, settlement, or damages in the Underlying Action to the extent based upon, arising out of, or attributable to any fraudulent, criminal, malicious, dishonest, intentional, or willful violation of any statute or regulation by an insured, subject to the terms and limitations of the Policy;

G. Declaring that Penn-America has no duty to indemnify any insured for loss, judgment, award, settlement, or damages in the Underlying Action to the extent based upon, arising out of, or attributable to any actual or alleged breach of warranty, guarantee, or promise, subject to the terms and limitations of the Policy;

H. Declaring that Penn-America has no duty to indemnify any insured for punitive damages, exemplary damages, fines, penalties, treble damages, or any other increase in damages resulting from the multiplication of compensatory damages;

I. Declaring that Penn-America has not waived and is not estopped from asserting any other applicable Policy term, condition, limitation, exclusion, defense, or right;

J. Awarding Penn-America its costs and such other and further relief as the Court deems just and proper.

19

Respectfully submitted,

ETHRIDGE LAW GROUP, LLC


By: *s/ Mary S. Willis*
    MARY S. WILLIS
    Federal Bar No. 12388
    R. MICHAEL ETHRIDGE
    Federal Bar No. 7497
    1100 Queensborough Blvd., Suite 200
    Mount Pleasant, SC 29464
    843-614-0007
    mwillis@ethridgelawgroup.com
    methridge@ethridgelawgroup.com

    *Attorneys for Plaintiff Penn-America Insurance Company*

20